EXHIBIT A

DAVID C. SHONKA
Acting General Counsel

ADAM M. WESOLOWSKI
GREGORY A. ASHE
Federal Trade Commission
600 Pennsylvania Avenue NW
Washington, DC 20850
Telephone: 202-326-3068 (Wesolowski)
Telephone: 202-326-3719 (Ashe)
Facsimile: 202-326-3768
Email: awesolowski@ftc.gov; gashe@ftc.gov

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Phone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff

**UNITED STATES DISTRICT**
**DISTRICT OF NEVAD**

**2:18-cv-00030-GMN-PAL**

| **FEDERAL TRADE COMMISSION,**<br><br>Plaintiff,<br><br>v.<br><br>**CONSUMER DEFENSE, LLC**, a Nevada limited liability company; **CONSUMER LINK, INC.**, a Nevada corporation; **PREFERED LAW, PLLC**, a Utah professional limited liability company; **AMERICAN HOME LOAN COUNSELORS**, a Utah corporation; **AMERICAN HOME LOANS, LLC**, a Utah limited liability company; **CONSUMER DEFENSE GROUP, LLC**, f/k/a **MODIFICATION REVIEW BOARD, LLC**, a Utah limited liability company; **CONSUMER DEFENSE, LLC**, a Utah limited liability | **Ca**<br><br>**COMPLAINT FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF** |
|---|---|

EXHIBIT A
Page 1

company; **BROWN LEGAL, INC.**, a Utah corporation; **AM PROPERTY MANAGEMENT, LLC**, a Utah limited liability company; **FMG PARTNERS, LLC**, a Utah limited liability company; **ZINLY, LLC**, a Utah limited liability company; **JONATHAN P. HANLEY**, in his individual and corporate capacity; **BENJAMIN R. HORTON**, in his individual and corporate capacity; and **SANDRA X. HANLEY**, in her individual and corporate capacity,

Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1. The FTC brings this action under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), and the 2009 Omnibus Appropriations Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of 2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21, 2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the Mortgage Assistance Relief Services Rule ("MARS Rule (Regulation O)"), 12 C.F.R. Part 1015, in connection with the marketing and sale of mortgage assistance relief services.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345; 15 U.S.C. §§ 45(a), 53(b); and Section 626 of the Omnibus Act, as clarified by Section 511 of the Credit Card Act, and amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C. § 5538.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (c)(2) and 15 U.S.C. § 53(b).

## PLAINTIFF

4. Plaintiff FTC is an independent agency of the United States Government created by statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce. In addition, pursuant to 12 U.S.C. § 5538, the FTC also enforces the MARS Rule (Regulation O), which requires mortgage assistance relief services ("MARS") providers to make certain disclosures, prohibits certain representations, and generally prohibits the collection of an advance fee.

5. The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the MARS Rule (Regulation O); and to secure such equitable relief as may be appropriate in each case, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies. 15 U.S.C. §§ 53(b); § 626, 123 Stat. 678, as clarified by § 511, 123 Stat. 1763-64, and amended by § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538.

## DEFENDANTS

6. Defendant **Consumer Defense, LLC ("Consumer Defense - Nevada")** is a Nevada limited liability company with its principal place of business at 500 N. Rainbow Blvd., Ste. 300; Las Vegas, Nevada. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Consumer Defense - Nevada has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Consumer Defense - Nevada transacts or has transacted business in this District and throughout the United States.

7. Defendant **Consumer Link, Inc. ("Consumer Link")** is a Nevada corporation with its principal place of business at 200 S. Virginia, 8th Floor; Reno, Nevada. Consumer Link registered as a Nevada non-profit company, but it has no federal non-profit status and has not

operated as a non-profit. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Consumer Link has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Consumer Link transacts or has transacted business in this District and throughout the United States.

8. Defendant **Preferred Law, PLLC ("Preferred Law")** is a Utah professional limited liability company with its principal place of business at 2825 E. Cottonwood Pkwy, Ste. 500; Salt Lake City, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Preferred Law has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Preferred Law transacts or has transacted business in this District and throughout the United States.

9. Defendant **American Home Loan Counselors** is a Utah corporation with its principal place of business at 8180 S. 700 E., Ste. 110; Sandy, Utah. American Home Loan Counselors registered as a Utah non-profit organization, but it has no federal non-profit status and has not operated as a non-profit. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, American Home Loan Counselors has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. American Home Loan Counselors transacts or has transacted business in this District and throughout the United States.

10. Defendant **American Home Loans, LLC ("American Home Loans")** is a Utah limited liability company with its principal place of business at 2825 E. Cottonwood Pkwy, Ste. 500; Salt Lake City, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, American Home Loans has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. American Home Loans transacts or has transacted business in this District and throughout the United States.

11. Defendant **Consumer Defense Group, LLC, f/k/a Modification Review Board, LLC ("Modification Review Board")** is a Utah limited liability company with its principal place of business at 41 W. 9000 S., Sandy, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Modification Review Board has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Modification Review Board transacts or has transacted business in this District and throughout the United States.

12. Defendant **Consumer Defense, LLC ("Consumer Defense - Utah")** is a Utah limited liability company with its principal place of business at 500 N. Rainbow Blvd., Ste. 300; Las Vegas, Nevada. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Consumer Defense - Utah has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Consumer Defense - Utah transacts or has transacted business in this District and throughout the United States.

13. Defendant **Brown Legal, Inc. ("Brown Legal")** is a Utah corporation with its principal place of business at 9925 Aplomado, Sandy, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Brown Legal has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Brown Legal transacts or has transacted business in this District and throughout the United States.

14. Defendant **AM Property Management, LLC ("AM Property")** is a Utah limited liability company with its principal place of business at 8180 S. 700 E., Ste. 110; Sandy, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, AM Property has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. AM Property transacts or has transacted business in this District and throughout the United States.

15. Defendant **FMG Partners, LLC ("FMG Partners")** is a Utah limited liability company with its principal place of business at 2081 Pinnacle Terrace Way, Ste. 201; Cottonwood Heights, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, FMG Partners has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. FMG Partners transacts or has transacted business in this District and throughout the United States.

16. Defendant **Zinly, LLC ("Zinly")** is a Utah limited liability company with its principal place of business at 9980 South 300 West, Suite 200; Sandy, Utah. At times material to this Complaint, acting alone or as part of the common enterprise described in paragraph 20, Zinly has advertised, marketed, provided, offered to provide, or arranged for others to provide MARS, as defined in 12 C.F.R. § 1015.2. Zinly transacts or has transacted business in this District and throughout the United States.

17. Defendant **Jonathan P. Hanley** is or was a manager, incorporator, director, or organizer of Preferred Law, American Home Loan Counselors, American Home Loans, Modification Review Board, Consumer Defense – Utah, Consumer Defense - Nevada, Consumer Link, Brown Legal, AM Property, and Zinly. He is an authorized signatory on many of Defendants' bank and merchant accounts, and is listed as the contact for Defendants' telecommunications services. He is also listed as the registrant and contact person for many of Defendants' Internet websites, and domain registration fees are often paid with his personal credit card. At all times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Jonathan Hanley, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

18. Defendant **Benjamin R. Horton** is or was a manager, incorporator, director, or supervisor of Preferred Law and American Home Loan Counselors. Horton is one of Defendants' primary loan modification negotiators and often drafts and signs letters sent to

consumers' lenders. He has also appeared on behalf of Defendants in state law enforcement proceedings. He is also an authorized signatory on several of Defendants' bank accounts. At times material to this complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Horton, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

19. Defendant **Sandra X. Hanley** is or was a manager or director of Preferred Law, American Home Loan Counselors, Modification Review Board, Consumer Defense – Nevada, Consumer Link, AM Property, and Zinly. She is an authorized signatory on many of Defendants' merchant and bank accounts, appears as an authorized representative on many of Defendants' consumer contracts, and manages Defendants' payroll. In addition, some of the registration fees for Defendants' Internet websites are paid with her personal credit card. At times material to this complaint, acting alone or in concert with others, she has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint. Sandra Hanley, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

20. Preferred Law, American Home Loan Counselors, American Home Loans, Modification Review Board, Consumer Defense – Utah, Consumer Defense - Nevada, Consumer Link, Brown Legal, AM Property, FMG Partners, and Zinly (collectively, "Corporate Defendants") have operated as a common enterprise while engaging in the deceptive acts and practices alleged below. These Corporate Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, and employees, and office locations; that have commingled funds; and that have shared one another's marketing materials. Because these Corporate Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below. Defendants Jonathan Hanley,

Benjamin Horton, and Sandra Hanley have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Corporate Defendants that constitute the common enterprise.

## COMMERCE

21. At all times material to this complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

### Overview

22. From at least October 2011 to the present, Defendants, through operation of the common enterprise, have engaged in a course of conduct to advertise, market, sell, provide, offer to provide, or arrange for others to provide mortgage assistance relief services (MARS), including mortgage loan modification services, loan document audits, and services to stop or avoid foreclosure.

23. Defendants have marketed their services in a variety of ways, such as online advertising, including through their websites, through mailers, on television and radio ads, and over the phone.

24. Defendants have preyed on financially distressed homeowners by luring them into signing contracts for MARS services with promises that they will receive expert legal assistance from Defendants' attorneys that will stop them from going into foreclosure and modify their mortgage loans to make their payments more affordable. Defendants have touted a perfect or nearly perfect track record of success in obtaining modifications, such as 98-100%, including with particular lenders, and in many instances have provided a guarantee that they will not fail to obtain modifications for their customers. Defendants have often claimed that these modifications will reduce homeowners' interest rates and monthly payments by substantial amounts—for example, by cutting interest rates in half and reducing monthly payments by hundreds of dollars.

25. Defendants have typically charged $3,900 in monthly installments of $650, depending on how much the consumer is willing to pay. Defendants have explicitly told consumers that they will not start working on their files until they receive payment. Defendants have charged these fees before they have obtained any modification or settlement offers from lenders and consumers have agreed to such offers.

26. Defendants have strung consumers along for months and assured them that Defendants are working on their modification packages. As part of this ploy, Defendants have instructed consumers not to pay their mortgages and not to communicate with their lenders, instead changing consumers' contact information to that of Defendants or requesting that consumers forward lender correspondence to Defendants. In numerous cases, Defendants have justified their instructions by stating that because Defendants will be successful in obtaining modifications, it is unnecessary for consumers to make regular mortgage payments; in some cases, Defendants have told consumers that they need to be behind on their mortgages to be eligible for a modification. In numerous instances, consumers have trouble reaching Defendants for updates on their cases, and Defendants have repeatedly asked for the same documents that consumers have already submitted.

27. In numerous instances, Defendants have failed to obtain any relief for their customers. In numerous instances, consumers have learned from their lenders that Defendants failed to provide complete modification documents, submitted irrelevant requests for information that would not lead to getting a modification, or never even contacted the lenders at all. Many consumers have incurred substantial interest charges and other penalties from paying Defendants instead of their mortgages, and some have fallen into foreclosure and lost their homes. Numerous consumers have complained about Defendants' business practices.

**Defendants Make Deceptive Promises on Their Websites and on Sales Calls**

28. Defendants have initiated contact with consumers in many ways, including inbound telephone calls from consumers originating from Defendants' websites or other marketing materials, such as mailers and radio ads, and outbound calls to consumers in response

to information consumers submit on Defendants' websites. Defendants' ads and sales pitches have touted their loan modification and foreclosure prevention services and their legal expertise, and in numerous instances have included a guarantee that consumers will get loan modifications.

29. For example, one of Defendants' websites, AttorneyLoanModifications.com—which is substantially similar to another of Defendants' websites, HomeLoanModificationLawyer.com and its near-identical Spanish-language twin, AbogadoDeModificacion.com—promotes Defendants' loan modification services by including a form for consumers to submit their contact information and stating: "**Fill the form** below to handle your home loan modification application, it might be your only chance to get what you deserve! *We can help you keep your home!*"

# Attorney Loan Modifications

Fill the form below to handle your home loan modification application, it might be your only chance to get what you deserve

*We can help you keep your home!*

ABOUT YOUR HOME LOAN

PROPERTY VALUE | YOUR LENDER | BALANCE OWING

OWNER MONTHLY INCOME | YOUR STATE | EMAIL

FIRST NAME | LAST NAME | PHONE

UNDERSTAND YOUR RIGHTS AS A HOME OWNER | YOUR INFO IS SAFE. READ OUR PRIVACY POLICY




## Home Loan Modification Resources

### What is a home loan modification?

A loan modification is a reduction of your payment by your lender. This new payment is supposed to be affordable for the homeowner and in exhange for this lower payment your bank is now saved the cost and hassle of a foreclosure sale of your home.

The payment is reduced to 31 percent of the home owner's income to loan ratio, and so the program is therefore only really of any use to those home owners who have home loan payments that exceed 31 percent of their monthly income.

The goal of a home loan modification is to help home owners who find themselves unable to meet current home loan payment obligations by renegotiating interest rates, financing rates, deferred payments or to exit the obligation to avoid foreclosure. Read more about the requirements to qualify for a home loan modification.

### What is the point of a home loan modification?

If protecting your credit score is a factor in your decision to make a home loan




Loan Documents

Why Choose Our Team?

Success Stories

Further down the page, the website states "Contact our Consumer Defense Team of Experts to handle your home loan mortgage application, it might be your only chance to get what you deserve!" On another page, reached through a link titled "**How to Modify a Home Loan**" posted at the side of the homepage, the website also urges consumers to contact Defendants'

attorneys for assistance with loan modifications because consumers are less likely to be able to obtain one on their own:

> The only consistently good way to deal with a bad home loan situation is by consulting a lawyer to handle the home loan modification application. Getting good legal representation is the best method for ensuring one's interests are protected in often tense negotiations. This is not something to do alone.

30. Another of Defendants' websites, HomeRelief.com, provides a form for consumers to provide their contact information and states: "You *do not* have to be buried under your mortgage anymore. *A Loan Modification Can Lower Your Mortgage Payments and Stop Foreclosure!*" Further down the page, the website assures consumers that "Going to your lender with the representation of an Attorney, [sic] will make a scary process seem simple," and that "[Defendants] have already helped thousands of people to get back on track and keep their homes," listing several purported success stories of consumers who obtained loan modifications, such as the following:

**Borrower was 7 months behind. MONTHLY PAYMENT CUT OVER 60%!**

**Borrower now saving over $24,000.00 a year!**

Lender: IndyMac

Old Payment: $3,496.21

Old Rate: 8.00%

New Payment: $1,474.26

New Rate: 2.50%

31. In numerous instances, Defendants' general commercial communications, such as their websites, have not clearly and prominently contained the following required disclosures:

a. "[Name of Defendant] is not associated with the government, and our service is not approved by the government or your lender"; and

b. "Even if you accept this offer and use our service, your lender may not agree to change your loan."

For example, Defendants' websites modificationreviewboard.com, preferredlawteam.com, hardshipletters.org, hardshipletters.com, americanhomeloans.com, homemodificationlawyer.com, and consumerdefense.com have not contained the disclosures at all. Defendants' websites attorneyloanmodifications.com and homerelief.com have only provided the required disclosures in inconspicuous text located in a footnote at the bottom of the screen, visible only after scrolling down, or through a separate linked page available through a hyperlink located in a footnote at the bottom of the screen.

32. In numerous instances, when consumers have responded to Defendants' advertising and called Defendants' representatives on the phone to learn more about Defendants' mortgage assistance relief services, the representatives have made false claims about the services to entice consumers to sign up with Defendants.

33. In numerous instances, Defendants' representatives have told consumers expressly or by implication that if they enroll with Defendants they will likely obtain loan modifications or other concessions from lenders, including substantial reductions in interest rates (e.g., cutting the rates in half) and monthly payments (hundreds of dollars per month). Defendants' representatives have often made these claims on the initial sales call, before there has been any opportunity to do an extensive review of consumers' financial situation, and to consumers who have tried and failed to get modifications in the past.

34. In numerous instances, Defendants' representatives have told consumers that they have a nearly perfect or perfect record of success at getting modifications for previous customers and that Defendants will guarantee that consumers get a modification.

35. In numerous instances, Defendants' representatives have told consumers that they have special relationships or agreements with consumers' lenders that have allowed Defendants to negotiate loan modifications.

36. In numerous instances, Defendants' representatives have indicated that Defendants are affiliated with, endorsed or approved by, or otherwise associated with the

government or with federal government loan modification programs, such as the federal Making Home Affordable program.

37. In numerous instances, Defendants' representatives have told consumers that Defendants are a law firm or otherwise work with attorneys to provide expert legal assistance from attorneys to obtain loan modifications.

38. In numerous instances, Defendants' representatives have told consumers that attorneys working with Defendants will be able to prevent or stop foreclosure.

39. In numerous instances, Defendants' representatives have told consumers that they do not have to pay their mortgage or contact their lender while working with Defendants.

40. In numerous instances, Defendants' representatives have not clearly and prominently provided the following required disclosures to consumers in consumer-specific commercial communications:

a. "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services,";

b. "[Name of Defendant] is not associated with the government, and our service is not approved by the government or your lender,";

c. "Even if you accept this offer and use our service, your lender may not agree to change your loan,"; and

d. "If you stop paying your mortgage, you could lose your home and damage your credit."

**Defendants Reinforce Their Deceptive Claims in Pre-Purchase Correspondence and Documents**

41. In numerous instances, after the initial sales pitch, Defendants have provided consumers with additional materials via email or provided reassurance over the phone to bolster

their claims about the services they will provide and the outcomes that consumers who enroll in Defendants' program can expect to achieve.

42. For example, Defendants' MARS service agreements have explicitly stated that consumers are signing up with Defendants in order to obtain loan modifications and avoid foreclosure. Agreements with Preferred Law have stated that consumers "appoint Preferred Law, PLLC . . . to negotiate and act on behalf of the undersigned with respect to avoiding foreclosure of the following real property . . ." and that Preferred Law's representatives are authorized to communicate with lenders in order to allow Preferred Law "to evaluate and formulate settlement, modification relief services, or payment offers" and make these offers to lenders.

43. Additionally, in numerous instances, Defendants have provided guarantee forms with their MARS service agreements that contain language substantially similar to the following:

> Based on the past performance of American Home Loan Counselors with the assistance of Preferred Law's federal legal services, and our knowledge of your factual situation, MRB [Modification Review Board] hereby GUARANTEES that a modification or home foreclosure alternative pursuant to the HAFA program will be secured for you conditioned upon the following terms . . .

The "conditions" have consisted of items such as timely returning documents and paying fees to Defendants and ensuring that any information provided to Defendants is and remains accurate and complete.

44. Furthermore, in numerous instances, Defendants have exploited the existence of government loan modification programs and consumers' desire to obtain modifications. Making Home Affordable ("MHA") and its associated programs, such as the Home Affordable Modification Program, have been publicized by numerous major mortgage lenders and servicers, non-profit and community-based organizations, the federal government, and the news media. Defendants have also frequently referred to MHA during calls with consumers, and on their websites.

45. In numerous instances, Defendants' correspondence with consumers has contained doctored logos that suggest that Defendants are affiliated with, endorsed or approved by, or otherwise associated with the federal government's Making Home Affordable loan modification program. The official MHA logo appears as follows:

In numerous instances, Defendants' pre-purchase correspondence with consumers has contained the following logo:

**Post-Enrollment**

46. After consumers have enrolled in Defendants' program, Defendants have continued to represent that consumers will obtain loan modifications. For example, in some instances, Defendants have submitted requests for information ("Qualified Written Requests" or "QWRs") to consumers' lenders, and provided copies of these QWRs to consumers. The QWRs have often contained language that suggests to consumers that Defendants will obtain a loan modification from consumers' lenders. For example, one illustrative QWR sent from Preferred Law, Modification Review Board, and Benjamin Horton stated:

> You [consumers' lenders] should be aware, as we discussed, that Modification Review Board, LLC has been working diligently with numerous lenders to enter into loan modifications agreements [sic] with borrowers and lenders which empower borrowers to become reliable paying customers and loan companies to restart reliable revenue streams. Under new federal legislation as guidelines for such programs, we have been extremely successful in avoiding foreclosure for homeowners and assisting mortgage companies with ensuring that they can generate reliable revenue streams from their customers.

47. During the initial enrollment process, Defendants have requested payment information and authorization from consumers. They begin collecting fees, typically for $650 per month for six months for a total of $3,900, usually through automatic debits from consumers' credit or debit cards, soon after the consumer's enrollment. In some instances, Defendants have convinced consumers to continue paying fees beyond six months.

48. In numerous instances, Defendants request or receive payment of fees before the consumer has executed a written agreement with the consumer's dwelling loan holder or servicer that incorporates the offer of mortgage assistance relief Defendants obtained, if at all, from the consumer's dwelling loan holder or servicer. In many cases, Defendants have explicitly told consumers that Defendants will not begin working on consumers' loan modification until Defendants receive payment. And in numerous instances when consumers have fallen behind on payments to Defendants, Defendants have told consumers that they will cease working on consumers' files until they are paid.

49. In numerous instances, consumers who enroll do not receive legal representation. Although they may be assigned an attorney in a nominal sense, many consumers never meet or speak to an attorney licensed in the state where they reside or where the property at issue is located, or have had only introductory conversations. Typically, consumers who have enrolled with Defendants are assigned to a non-attorney customer service representative, who performs all or nearly all of the work on consumers' files. Defendants' non-attorney representatives have acted as consumers' primary points of contact during enrollment and throughout the purported loan modification process.

50. In numerous instances, consumers who have enrolled in Defendants' programs have been left to negotiate on their own with lenders. After consumers begin making payments to Defendants, Defendants' representatives have often been difficult to reach, with calls and emails left unanswered. Defendants' representatives typically only provide generic email status "updates" with little substance, instead asking for identical documents that consumers have already submitted or claiming that consumers' modification packages are under review with

their lenders. After months of sending Defendants documents for their loan modification applications, consumers have often learned that Defendants did not contact consumers' lenders at all, submitted incomplete loan modification applications, or ignored foreclosure notices.

51. In numerous instances, consumers enrolled in Defendants' programs have suffered significant economic injury, including: paying hundreds or thousands of dollars to Defendants and receiving little or no service in return; going into foreclosure; and even losing their homes.

52. In numerous instances, after consumers have enrolled in Defendants' programs and paid the requested advance fees, Defendants have failed to obtain a loan modification, payment or interest rate reduction, or other relief to stop foreclosure or make consumers' mortgage payments affordable.

53. In numerous instances, when aggrieved consumers have complained to Defendants and sought refunds, Defendants have denied such requests or only provided partial refunds, despite guaranteeing consumers that Defendants will obtain loan modifications.

## VIOLATIONS OF THE FTC ACT

54. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

55. Misrepresentations or deceptive omissions of material fact constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### Deceptive Representations Regarding Substantially More Affordable Loan Payments, Substantially Lower Interest Rates, or Foreclosure Avoidance

56. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale or performance of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication, that Defendants generally will obtain mortgage loan modifications for consumers that will make their payments substantially more affordable, substantially lower their interest rates, or help them avoid foreclosure.

57. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 56 of this Complaint, such representations were false or not substantiated at the time Defendants made them.

58. Therefore, the making of the representations as set forth in Paragraph 56 of this Complaint constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**COUNT II**

**Deceptive Representations Regarding Loan Modification Services**

59. In numerous instances, in connection with the advertising, marketing, promotion, offering for sale or sale of mortgage assistance relief services, Defendants have represented, directly or indirectly, expressly or by implication:

(a) that Defendants are affiliated with, endorsed or approved by, or are otherwise associated with the maker, holder, or servicer of the consumer's dwelling loan, including claiming that Defendants have a special relationship or special agreements with the maker, holder, or servicer of the consumer's dwelling loan;

(b) that Defendants are part of or affiliated with, endorsed or approved by, or are otherwise associated with the federal government or federal government programs; and

(c) that the consumer is not obligated to, or should not, make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan;

60. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 59 of this Complaint:

(a) Defendants are not affiliated with, endorsed or approved by, or are otherwise associated with the maker, holder, or servicer of the consumer's dwelling loan;

(b) Defendants are not part of or affiliated with, endorsed or approved by, or are otherwise associated with the federal government or federal government programs; and

(c) the consumer is obligated to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

61. Therefore, Defendants' representations as set forth in Paragraph 59 are false and misleading and constitute a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**VIOLATONS OF THE MARS RULE (REGULATION O)**

62. In 2009, Congress directed the FTC to prescribe rules prohibiting unfair or deceptive acts or practices with respect to mortgage loans. Omnibus Act, § 626, 123 Stat. 678, as clarified by Credit Card Act, § 511, 123 Stat. 1763-64. Pursuant to that direction, the FTC promulgated the MARS Rule, 16 C.F.R. Part 322, all but one of the provisions of which became effective on December 29, 2010. Title X of the Dodd-Frank Act, 124 Stat. 1376, transferred the FTC's rulemaking authority under the Omnibus Act, as amended, to the Consumer Financial Protection Bureau ("CFPB"). On December 16, 2011, the CFPB republished the MARS Rule as Regulation O, 12 C.F.R. Part 1015.

63. The MARS Rule (Regulation O) defines "mortgage assistance relief service provider" as "any person that provides, offers to provide, or arranges for others to provide, any mortgage assistance relief service" other than the dwelling loan holder, the servicer of a dwelling loan, or any agent or contractor of such individual or entity. 12 C.F.R. § 1015.2.

64. Since January 31, 2011, the MARS Rule (Regulation O) has prohibited any mortgage assistance relief service provider from requesting or receiving payment of any fee or other consideration until the consumer has executed a written agreement between the consumer and the consumer's loan holder or servicer that incorporates the offer that the provider obtained from the loan holder or servicer. 12 C.F.R. § 1015.5(a).

65. The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from representing, expressly or by implication, in connection with the advertising, marketing, promotion, offering for sale, sale, or performance of any mortgage assistance relief service, that a consumer cannot or should not contact or communicate with his or her lender or servicer. 12 C.F.R. § 1015.3(a).

66. The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from misrepresenting, expressly or by implication, any material aspect of any mortgage assistance relief service, including but not limited to:

(a) the likelihood of negotiating, obtaining, or arranging any represented service or result. 12 C.F.R. § 1015.3(b)(1);

(b) that a mortgage assistance relief service is affiliated with, endorsed or approved by, or otherwise associated with (i) the United States government, (ii) any governmental homeowner assistance plan, (iii) any Federal, State, or local government agency, unit, or department, (iv) any nonprofit housing counselor agency or program, (v) the maker, holder, or servicer of the consumer's dwelling loan, or (vi) any other individual, entity, or program. 12 C.F.R. § 1015.3(b)(3)(i)-(vi); and

(d) the consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan. 12 C.F.R. § 1015.3(b)(4).

67. The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every general commercial communication disclosing that (i) the provider is not associated with the government and its service is not approved by the government or any lender, and (ii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service. 12 C.F.R. §§ 1015.4(a)(1)-(3).

68. The MARS Rule (Regulation O) prohibits any mortgage assistance relief service provider from failing to place a statement clearly and prominently in every consumer-specific commercial communication (i) confirming that the consumer may stop doing business with the provider or reject an offer of mortgage assistance without having to pay for the services, (ii) disclosing that the provider is not associated with the government and its service is not approved by the government or any lender, and (iii) in certain cases, a statement disclosing that the lender may not agree to modify a loan, even if the consumer uses the provider's service, and (iv) in certain cases, a statement disclosing that if they stop paying their mortgage, consumers may lose their home or damage their credit. 12 C.F.R. §§ 1015.4(b)(1)-(4) and (c).

69. Pursuant to the Omnibus Act, § 626, 123 Stat. 678, as clarified by the Credit Card Act, § 511, 123 Stat. 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MARS Rule (Regulation O) constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT III

### Advance Payments for Mortgage Assistance Relief Services

70. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants ask for or receive payment before consumers have executed a written agreement between the consumer and the loan holder or servicer that incorporates the offer obtained by Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.5(a).

## COUNT IV

### Prohibited Representations

71. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(a), have represented, expressly or by

implication, that a consumer cannot or should not contact or communicate with his or her lender or servicer.

**COUNT V**

**Material Misrepresentations**

72. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants, in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.3(b)(1), (3)(i)-(iii), (3)(v), (4), have misrepresented, expressly or by implication, material aspects of their services, including, but not limited to:

(a) Defendants' likelihood of obtaining mortgage loan modifications for consumers that will make their payments substantially more affordable, substantially reduce their interest rates, and avoid foreclosure;

(b) Defendants are affiliated with, endorsed or approved by, or otherwise associated with:

(i) the United States government,

(ii) any governmental homeowner assistance plan,

(iii) any Federal government agency, unit, or department; or

(iv) the maker, holder, or servicer of the consumer's dwelling loan;

(c) The consumer's obligation to make scheduled periodic payments or any other payments pursuant to the terms of the consumer's dwelling loan.

**COUNT VI**

**Failure to Disclose**

73. In numerous instances, in the course of providing, offering to provide, or arranging for others to provide mortgage assistance relief services, Defendants have failed to clearly and prominently make the following disclosures:

(a) in all general commercial communications –

(1) "[Name of Company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(1); and

(2) "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(a)(2);

(b) in all consumer-specific commercial communications –

(1) "You may stop doing business with us at any time. You may accept or reject the offer of mortgage assistance we obtain from your lender [or servicer]. If you reject the offer, you do not have to pay us. If you accept the offer, you will have to pay us [insert amount or method for calculating the amount] for our services," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(1);

(2) "[Name of company] is not associated with the government, and our service is not approved by the government or your lender," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(2);

(3) "Even if you accept this offer and use our service, your lender may not agree to change your loan," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(b)(3); and

(4) "If you stop paying your mortgage, you could lose your home and damage your credit," in violation of the MARS Rule (Regulation O), 12 C.F.R. § 1015.4(c).

**CONSUMER INJURY**

74. Consumers have suffered and will continue to suffer substantial injury as a result

of Defendants' violations of the FTC Act and the MARS Rule (Regulation O). In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

75. Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC. The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

76. Section 626 of the Omnibus Act authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the MARS Rule (Regulation O), including rescission and reformation of contracts and the refund of money.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Federal Trade Commission, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. §§ 53(b), the Omnibus Act, and the Court's own equitable powers, requests that the Court:

A. Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action, and to preserve the possibility of effective final relief, including but not limited to a temporary and preliminary injunction, an order freezing assets, immediate access, and appointment of a receiver;

B. Enter a permanent injunction to prevent future violations of the FTC Act and the MARS Rule (Regulation O) by Defendants;

C. Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act and the MARS Rule (Regulation O), including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

E. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated: January 8, 2018

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

*/s/ Adam M. Wesolowski*

ADAM M. WESOLOWSKI
GREGORY A. ASHE
Federal Trade Commission
600 Pennsylvania Ave, N.W., CC-10232
Washington, DC 20580
Telephone: 202-326-3068 (Wesolowski)
Telephone: 202-326-3719 (Ashe)
Facsimile: 202-326-3768
Email: awesolowski@ftc.gov, gashe@ftc.gov

STEVEN W. MYHRE
Acting United States Attorney
BLAINE T. WELSH
Assistant United States Attorney
Nevada Bar No. 4790
333 Las Vegas Blvd. South, Suite 5000
Las Vegas, Nevada 89101
Telephone: (702) 388-6336
Facsimile: (702) 388-6787

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION